IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:08CR129-1 |
| | ) | |
| EVERETT MICHAEL BYERS, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION

Beaty, Chief Judge.

This matter is before the Court on Defendant Everett Michael Byers' Motion to Suppress [Doc. #11]. Defendant Everett Michael Byers ("Byers" or "Defendant") is under indictment for possession with intent to distribute 124.9 grams of cocaine hydrochloride; two counts of possession of ammunition by a convicted felon; possession with intent to distribute 31.3 grams of cocaine base ("crack"); and possession with intent to distribute 125.5 grams of cocaine hydrochloride. On July 11, 2008, Defendant moved to suppress items that were recovered from a search incident to arrest as well as items seized during a subsequent search of his home and vehicles pursuant to a search warrant. On August 5, 2008, a hearing was held on the motion. Assistant United States Attorney Terry Meineke appeared on behalf of the Government and Attorney Wayne Harrison appeared on behalf of the Defendant. For the reasons stated below, Defendant's motion will be DENIED.

I.    FACTUAL BACKGROUND

On or about September 17, 2007, police responded to calls regarding gunfire at an Alcohol and Beverage Control ("ABC") store at 1414 National Highway in Thomasville, North Carolina. Detective Steve Boles ("Detective Boles") responded to the call. Upon arriving,

Detective Boles interviewed a witness, Rocklan Barham, who was present during the incident. Barham reported seeing a white Honda Accord parked in front of the store. He subsequently observed a gray Dodge Charger pull up behind the Honda Accord. Barham reported that the driver of the Honda spoke briefly to an occupant of the Dodge and then returned to the Honda. At this point, Barham reported that someone in the Dodge fired two or three shots from a handgun. Barham also reported that he recognized one of the occupants of the Honda as Lance Hill ("Hill"). Detective Boles also spoke with two of the ABC store employees who said that they were inside the building at the time of the alleged shooting. While at the scene, Detective Boles also recovered a bullet fragment from the sidewalk in front of the ABC store and observed some damage to the building.

On the following day, Detective Boles interviewed Lance Hill. Hill identified his cousin, William Allen Edwards ("Edwards"), as the driver of the Honda and stated that one of the occupants of the Dodge was a "light-skinned, mixed-race male" by the name of "Mike." Detective Boles then went to interview Edwards. Edwards, however, was not home at the time. Detective Boles instead spoke with Edwards' mother, Donna Lackey, who reported having overheard an argument on the night of the incident between Edwards and his stepfather. Ms. Lackey told Detective Boles that during the argument,"Mike Byers was mentioned as the shooter." Detective Boles then left his telephone number with Edwards' mother and told her to have Edwards contact him.

Following the interview with Edwards' mother, Detective Boles ran the name "Michael Byers" through the Police to Police and PISTOL computer databases and found that a light-

2

skinned, mixed-race male by the name of Michael Byers was in the system. Based upon this information, Boles applied for and received an arrest warrant for the offense of discharging a weapon into occupied property in violation of N. C. Gen. Stat § 14-34.1(B).

Later that same day, after the warrant had been issued, but before the warrant was executed, Detective Boles received a call from Edwards who identified the Defendant as the shooter. Shortly thereafter, officers observed the Defendant drive by their location and conducted a traffic stop. During the traffic stop, they placed the Defendant under arrest based on the outstanding arrest warrant. When the Defendant was searched incident to arrest, officers discovered approximately 125 grams of cocaine in the Defendant's pocket and a key to the Defendant's residence. Additionally, when the vehicle was searched incident to arrest, Officers recovered a backpack containing six rounds of .357 ammunition and four rounds of .22 caliber ammunition.

Based in part on what was found on the Defendant's person and in the vehicle during the search incident to his arrest, Officer Parven of the Drug Enforcement Agency obtained a search warrant for the Defendant's residence. When the search warrant was executed, officers discovered approximately 32 grams of crack, 126 grams of powder cocaine, drug paraphernalia, over $9,000 in cash, and documents and photographs belonging to the Defendant. Officers also searched the two vehicles at the residence listed in the search warrant and found fifty rounds of .22 caliber ammunition and a 9mm pistol magazine loaded with eight rounds of ammunition. Defendant now moves to suppress all of the evidence recovered from the search of his person and his vehicle at the time of his arrest, arguing that there was no probable cause for issuance

3

of a warrant for his arrest. Defendant further moves to suppress the items recovered during the subsequent search of residence and vehicles as the "fruits" of an unlawful arrest.

II.     DISCUSSION

A.      Probable Cause for the Issuance of the Arrest Warrant

Defendant argues that there was no probable cause from which to issue a warrant for his arrest for discharging a weapon into occupied property. Arrest warrants, like search warrants, must be issued only upon a judicial finding of probable cause by a neutral and detached magistrate. Giordenello v. United States, 357 U.S. 480, 485-86, 78 S. Ct. 1245, 1249-50, 2 L. Ed. 2d 1503 (1958). "Because probable cause is an objective test, [the court] examine[s] the facts within the knowledge of the arresting officers to determine whether they provide a probability on which reasonable and prudent person would act." United States v. Gray, 137, F.3d 765, 170 (4th Cir. 1998). Probable cause will be found to exist when "the facts and circumstances within an officer's knowledge – or of which he possesses reasonably trustworthy information – are sufficient in themselves to convince a person of reasonable caution that an offense has been or is being committed." Wadkins v. Arnold, 214 F.3d 535, 539 (4th Cir. 2000). While probable cause demands "more than a mere suspicion . . . evidence sufficient to convict is not required." Taylor v. Waters, 81 F.3d 429, 433 (4th Cir. 1996). To that end, officers need not "resolve every doubt about a suspect's guilt before probable cause is established." Gomez v. Atkins, 296 F.3d 252, 262 (4th Cir. 1992) (quoting Tochinsky v. Siwinski, 942 F.2d 257, 264 (4th Cir. 1991). Finally, in assessing whether probable cause existed when an arrest warrant was issued, the court must examine the "totality of the circumstances." Id.

4

Under North Carolina law, "[a]ny person who willfully or wantonly discharges or attempts to discharge any firearm . . . capable of discharging shots, bullets . . . .into any building. . . while it is occupied is guilty of a class D felony." N.C. Gen. Stat § 14-34.1(B). In the present case, Detective Boles applied for an arrest warrant for the Defendant for the offense of discharging a weapon into occupied property. In support of the application for an arrest warrant for this offense, Detective Boles testified as to the following information which was available to him prior to appearing before the Magistrate with an application for a warrant for the Defendant's arrest: (1) eyewitness observation that a white Honda pulled behind a gray Dodge and that an occupant of the Dodge fired two or three shots from a handgun; (2) eyewitness statement that one of the occupants of the Honda was named Lance Hill; (3) Hill's identification of his cousin, William Edwards, as the driver of the Honda; (4) Hill's identification of a "light-skinned, mixed-race male" named "Mike" as an occupant of the Dodge; (5) Edwards' mother's statement that she overheard that "Mike Byers" was the shooter during an argument between Edwards and his stepfather on the night of the shooting; (6) confirmation through the police computer database that a Michael Byers was a "light-skinned, mixed-race male;" (7) a bullet fragment recovered from the sidewalk in front of the ABC store; (8) damage to the ABC store building; and (9) information that at least two employees were present in the ABC store at the time of the shooting.

Notwithstanding this information, Defendant contends that there was no evidence presented to the magistrate that any projectile fired from the weapon struck any occupied dwelling. While there was some dispute at the hearing as to which officers or witnesses

5

observed the damage to the ABC store, the Court finds Detective Boles' testimony credible to the extent that he observed damage to the building. Further, the presence of a bullet fragment on the sidewalk next to the building provides circumstantial evidence that a bullet in fact struck the building. These were the facts presented to the magistrate in support of the application for the arrest warrant. Therefore, the Court finds that there was sufficient evidence presented to the magistrate from which a reasonable person could conclude that a bullet was fired into the ABC store so as to constitute the charged criminal offense.

Defendant further contends, however, that there was no evidence presented to the magistrate which specifically identified him as the individual who was responsible for the shooting. To that end, Defendant contends that the only identification of him as the shooter, was a hearsay statement from Edwards' mother, Donna Lackey, that "Mike Byers was mentioned as the shooter" during an argument she overheard between her son and his stepfather. Hearsay may provide sufficient grounds for probable cause; however, a reviewing magistrate must examine "the veracity and the base of knowledge of those sources supplying hearsay information." Illinois v. Gates, 462 U.S. 213, 238 (1983); United States v. Wilhelm, 80 F.3d 116, 118-19 (4th Cir. 1996). Further, in order to establish probable cause on the basis of information from an informant, there must be a showing of "some of the underlying circumstances" from which the informant reached his conclusions. Aguillar v. Texas, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964).

Here, the Court cannot say that Detective Boles had a substantial basis for crediting Ms. Lackey's statement. Detective Boles testified that Ms. Lackey could not state who identified

6

"Mike Byers" as the person responsible for the shooting. Therefore, it is equally plausible that it was Edwards' stepfather who stated or inferred that Byers was the shooter. This presumption is weakened by the fact that there is no indication that Edwards' stepfather was present at the scene; he could not, therefore, have had any first-hand knowledge of who fired the gun at the ABC store. It is also noteworthy that Detective Boles did not attempt to ascertain on what basis Edwards' stepfather could have concluded that the Defendant was responsible for the shooting. Finally, there is no evidence that Detective Boles spoke with Edwards prior to obtaining the warrant for Byers' arrest, whom he at least suspected was present at the scene and could confirm or deny whether it was he who stated that Byers was the shooter.

The Court, therefore, concludes that there was no examination of either the veracity or the basis of knowledge of the source supplying the hearsay information. Without Edwards' mother's statement, the totality of the circumstances suggest only that an occupant of a gray Dodge Charger fired two or three shots at the ABC store while employees were present inside, and that one of the occupants of the Dodge was a "light-skinned, mixed-race male" named "Mike Byers." Those facts, while they place the Defendant at the scene, do not establish that the Defendant was probably responsible for the shooting. In issuing an arrest warrant, there must not only be probable cause that an offense has been committed, but also probable cause to believe that the person to be arrested has committed it. Giordenello, 357 U.S. at 485, 78 S. Ct. at 1249. Because Edwards' mother's hearsay statement that "Mike Byers was mentioned as the shooter" was the only information before the magistrate that identified the Defendant as the individual who fired the shots at the ABC store, the Court cannot conclude that considering the

7

totality of the circumstances there was sufficient probable cause to issue a warrant for the

Defendant's arrest for the offense of discharging a weapon into occupied property.[1]

C.     The Good-Faith Exception

Having determined that the arrest warrant was not supported by sufficient probable

cause, the Court now turns to the question of the reasonableness of the officers' reliance on the

warrants' validity.   In an ordinary case, "an officer cannot be expected to question the

magistrate's probable-cause determination or his judgment that the form of the warrant is

technically sufficient." United States v. Leon, 468 U.S. 897, 913, 104 S. Ct. 3404, 3415 (1984).

Therefore, the so-called "good-faith exception" provides that evidence gathered as a result of

the arrest may still be admissible even if the warrant was lacking in probable cause, if the law

enforcement officer "reasonably [relied] on a warrant issued by a detached and neutral

magistrate." Id. at 921, 104 S. Ct. at 3419.  Further, a law enforcement officer's reliance on the

magistrate's probable cause determination is one of objective reasonableness. Id. at 923, 104 S.

Ct. at 3420.

An officer's reliance on an arrest warrant is presumed reasonable except in limited

circumstances where the officer could have no reasonable grounds for believing that the warrant

was properly issued.  Leon, 468 U.S. at 922-23, 104 S. Ct. at 3420.  In United States v. Leon, the

--------

[1] The Court notes that there was evidence presented at the hearing that after the warrant had been issued, but prior to its execution, Edwards called Detective Boles' cellular phone and stated that "Michael Byers was responsible for the shooting."  Although Edwards' statement provided an eyewitness identification of the Defendant, it could not have provided probable cause for the issuance of the warrant for discharging a weapon into occupied property since at the time of the call, the warrant had already been issued. See, Maryland v. Garrison, 480 U.S. 79, 83, 107 S. Ct. 1013, 1013, 94 L. Ed. 2d 72 (1987) (holding that "items of evidence that emerge after the warrant is issued have no bearing on whether or not the warrant was validly issued.").

8

Court outlined four situations in which reliance on a warrant would not be reasonable:(1) "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth;" (2) if "the issuing magistrate wholly abandoned his judicial role;" (3) if the affidavit supporting the warrant "is so lacking in indicia of probable cause as to render official belief in its existence unreasonable;" and (4) if under the circumstances of the case the warrant is "so facially deficient . . . that the executing officers cannot reasonably presume it be valid." Id., 468 U.S. at 923, 104 S. Ct. at 1321.

Defendant first contends that the good-faith exception does not apply because the arrest warrant was so lacking in indicia of probable cause that it was unreasonable for Detective Boles and the other arresting officers to rely upon it. While the Court has held that the warrant at issue was not supported by sufficient probable cause, it cannot be said that Detective Boles and the other arresting officers were unreasonable for believing that the warrant was properly issued. Consequently, the Court finds that the warrant application was not "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." Id.

Defendant further contends that the good-faith exception does not apply because the magistrate who issued the warrant was not "neutral and detached," but rather acted as a "rubber stamp" for law enforcement in issuing the arrest warrant. Despite Defendant's assertions, however, there is no evidence in that the magistrate served as a "rubber stamp" for law enforcement officers in this case by failing to give due consideration to the testimony offered by Detective Boles in support of the warrant. Compare, United States v. Decker, 956 F.2d 773

9

(8th Cir. 1992) (holding that the good-faith exception would not apply where judge issued warrant without relying on officer's affidavit); with United States v. Martin, 297 F.3d 1308 (11th Cir. 2002) (declining to find that judge "wholly abandoned judicial role" where judge "at least read the affidavit (or heard what it contained from [the officer]) before signing [the warrant]"). Nor is there any evidence that the magistrate abandoned her "neutral and detached role" in the manner condemned in Loji Sales, Inc. v. New York. 442 U.S. 319, 99 S.Ct. 2319, 60 L. Ed. 2d 920 (1979) (where magistrate "allowed himself to become a member, if not the leader, of the search party which was essentially a police operation.").

Similarly, there is no evidence that Detective Boles attempted to mislead the magistrate or that he provided any information to the magistrate with reckless disregard for the truth. Finally, because the warrant sufficiently describes the person to be arrested and contains each of the elements of the offense of discharging a weapon into occupied property, this Court cannot say that the warrant was "so facially deficient" that the arresting officers could not have reasonably presumed it to be valid.[2] Therefore, although the Court has found that the arrest warrant was not supported by sufficient probable cause, the Court concludes that the law enforcement officers acted in good faith in relying on the validity of the warrant.[3] Accordingly,

---

[2] Nor can it be said that the offense as listed on the face of the warrant as "N.C. Gen. Stat. §14-34.1(A)," which states the offense of discharging a weapon into property, makes the warrant "so facially deficient" that it could not have been reasonably presumed to be valid. There is no dispute that the warrant in question was sought and issued for the offense of discharging a weapon into *occupied* property: a violation of N.C. Gen. Stat. §14-34.1(B). Further, the elements of a violation of N.C. Gen. Stat. §14-34.1(B), which are described on the face of the warrant, necessarily contain the elements of a violation of N.C. Gen. Stat. §14.34.1(A).

[3] As previously mentioned, after the warrant was issued, but prior to its execution, Edwards "advised [Detective Boles] that Michael Byers had been the person who fired the

Defendant's motion to suppress will be denied.

C. Recovery of Items During Execution of the Arrest Warrant and the Subsequent Search of the Defendant's Residence and Vehicles

Based on the outstanding arrest warrant, Officers stopped the Defendant's vehicle and effected his arrest. When executing the warrant, the Defendant was searched incident to arrest. See United States v. Nelson, 102 F.3d 1344 (4th Cir. 1996) (searches incident to arrest are well-established exception to the requirement to obtain a warrant under the Fourth Amendment). When the Defendant was searched, the officers found approximately 125 grams of cocaine in the Defendant's pocket. Having lawfully arrested the Defendant and finding contraband on the Defendant's person, the officers were entitled to search the Defendant's vehicle. See Thornton v. United States, 541 U.S. 615, 621-24 (2004) (holding that when a "recent occupant" of a vehcile is lawfully arrested, the vehicle and any containers therein may be searched without a warrant) affirming United States v. Thornton, 325 F.3d 189 (4th Cir. 2003); United States v.

_____

handgun on the date of the incident." Though the Court does not reach the issue of whether Edwards' call provided an independent basis to effect a warrantless arrest of the Defendant, it can be said here that Edwards' information would bolster any objectively reasonable officers' good-faith reliance on the magistrate's determination of probable cause, because it provided an additional reason for the arresting officers to believe that the Defendant was responsible for the shooting. In any event, the additional information from Edwards certainly did not cast doubt upon the magistrate's probable cause determination. Compare, United States v. Marin-Buitrago, 734 F.2d 889, 895 (2d Cir. 1984) (the duty to report new information to the magistrate does not arise unless the information casts doubt on the existence of probable cause); United States v. Perez, 484 F.3d 735, 744 (5th Cir. 2007) (holding that even in light of new information, probable cause still existed for a search of defendant's premises); with Mueller v. Tinkham, 162 F.3d 999 (8th Cir. 1998) (where issue of fact was presented as to whether officers' reliance on warrant was objectively reasonable after detectives learned information which cast doubt on the validity of the warrant).

11

Bush, 404 F.3d 263, 275-76 (4th Cir. 2005) (applying Thornton, upholding a vehicle search incident to arrest). This includes a warrantless search of any containers or compartments in the vehicle. Wyoming v. Houghton, 526 U.S. 295, 119 S. Ct. 1297, 143 L. Ed. 2d 408 (1999). Thus, the officers' search of the Defendant's vehicle which revealed six rounds of .357 ammunition and four rounds of .22 caliber ammunition in a backpack was also proper. Accordingly, the Court finds that the contraband and ammunition found on the Defendant's person and in his vehicle at the time of his arrest provided sufficient probable cause for the issuance of a search warrant to search the Defendant's residence.

The officers then utilized a key to the Defendant's residence that was found on the Defendant's person during his arrest to execute the search pursuant to the search warrant. During the search of the Defendant's residence the officers recovered approximately 32 grams of crack, 126 grams of powder cocaine, drug paraphernalia, over $9,000 in cash and documents and photographs which belonged to the Defendant. Pursuant to the search warrant, the officers also discovered fifty rounds of .22 caliber ammunition and a 9mm pistol magazine loaded with eight rounds of ammunition from two vehicles parked at the residence. Because the search of the Defendant's residence and vehicles were executed pursuant to a valid search warrant that was properly supported by probable cause, the Court finds that the evidence recovered during that search is also admissible.

III.    CONCLUSION

For the reasons discussed above, the Court finds that considering the totality of the

circumstances, there was insufficient probable cause to issue a warrant for the Defendant's arrest for the offense of discharging a weapon into occupied property. Nevertheless, the Court finds that the arresting officers relied upon the validity of the warrant in good faith. Therefore, the arrest of the Defendant in this case was lawful. Because the arrest of the Defendant was lawful, the items recovered from the Defendant's person and his vehicle as a part of a search incident to Defendant's arrest are admissible. Finally, the drugs and ammunition recovered during the Defendant's arrest established sufficient probable cause to support the subsequent issuance of a search warrant to search the Defendant's residence and the vehicles parked at the residence. Therefore, the items recovered during the search of the Defendant's residence and the vehicles at the residence are also admissible. Accordingly, Defendant's Motion to Suppress [Doc. #11] will be denied. An Order consistent with this Memorandum Opinion will be filed contemporaneously herewith.

This the 20th day of August, 2008.

_____
United States District Judge

13